UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Joseph A. Dickson |
| v. | : | Mag. No. 20-8182 |
| JEFFREY DAVIS, and JEREMY GILBERT, a/k/a "Ruck" | : | **CRIMINAL COMPLAINT** |

I, Special Agent Ricky Miller, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

Continued on the attached page and made a part hereof:

Ricky Miller, Special Agent
U.S. Department of Homeland Security,
Homeland Security Investigations

Special Agent Miller attested to this Complaint by telephone pursuant to Fed. R. Crim. P. 4.1(b)(2)(A), on June 22, 2020 at 1:15 p.m.

HONORABLE JOSEPH A. DICKSON
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

From in or around November 2019 through in or around February 2020, in Essex County, in the District of New Jersey and elsewhere, the defendant,

JEFFREY DAVIS,

did knowingly and intentionally conspire and agree with others known and unknown, to devise a scheme and artifice to defraud, and to obtain money and property from the victims by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice would affect a telephone service provider, and for the purpose of executing such scheme and artifice, did knowingly and intentionally transmit and caused to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1349.

**COUNT TWO**
(Conspiracy to Commit Wire Fraud)

From in or around November 2019 through in or around February 2020, in Essex County, in the District of New Jersey and elsewhere, the defendant,

JEREMY GILBERT,
a/k/a "Ruck,"

did knowingly and intentionally conspire and agree with others known and unknown, to devise a scheme and artifice to defraud, and to obtain money and property from the victims by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice would affect a financial institution, and for the purpose of executing such scheme and artifice, did knowingly and intentionally transmit and caused to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1349.

**ATTACHMENT B**

I, Ricky Miller, am a Special Agent, with the United States Department of Homeland Security, Homeland Security Investigations. I have knowledge of the following facts based upon both my investigation and discussions with other law enforcement personnel and others. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support the issuance of a complaint, I have not set forth each and every fact that I know concerning this investigation. Where statements of others are related herein, they are related in substance and part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

**The Conspiracies**

1. Law enforcement conducted an investigation into a drug trafficking organization ("DTO") operating in Irvington, New Jersey, and elsewhere, based on physical surveillance, intercepted communications, phone location data, and cooperating witnesses. Law enforcement learned that defendant Prosper Bazile, a/k/a "Koofy," "Dropkoofy" ("Bazile") was the leader of the DTO, and defendants David Gibson, a/k/a "Josh" ("Gibson"), Floyd Howard ("Howard"), Orlando Julien, a/k/a "Kooda" ("Julien"), Wesley Powell, a/k/a "Omar" ("Powell"), and Kenneth Roberts, a/k/a "Woozy" ("Roberts") were all members of the DTO.[1]

2. In the course of the investigation, law enforcement discovered two separate wire fraud conspiracies involving the DTO.

3. First, defendant Jeffrey Davis ("Davis") and Bazile engaged in a scheme to defraud a telephone service provider ("Provider-1") that sells iPhones ("Conspiracy-1").

4. Second, defendant Jeremy Gilbert, a/k/a "Ruck" ("Gilbert"), Bazile, and Julien, who owns a used car dealership (the "Car Dealership"), engaged in a scheme to obtain loans and/or lines of credit for the Car Dealership from financial institutions through fraud ("Conspiracy-2").

---

[1] On or about February 11, 2020, these six individuals were charged via criminal complaint for one count of conspiracy to distribute methamphetamine, heroin, and cocaine. See Mag. No. 20-10033 (MAH).

**Manner And Means Of Conspiracy-1**

5. During the relevant period, Davis worked at a retail store that sells iPhones with service provided by Provider-1 in or around Newark, New Jersey ("Store-1"). Store-1 sells iPhones to customers based on installment payment plans.

6. Through a federal wiretap on Bazile's phone ("Bazile's Phone"), law enforcement discovered that Davis and Bazile defrauded Store-1 by means of a scheme pursuant to which Davis would sell Bazile iPhones under false names. After obtaining custody of the iPhones, Bazile stopped making payments to Store-1. Bazile then resold the iPhones for a profit. Because the iPhones were purchased with accounts opened by nonexistent individuals, Provider-1 had little recourse for the delinquent accounts.

7. Pursuant to the wiretap, law enforcement intercepted numerous communications between Bazile and Davis concerning the scheme. For example, in or around December 2019, they had the following exchange:

- Davis texted Bazile, "I'm at [Provider-1] that's who I work for now."
- Bazile responded, "Can we rock out?"
- Davis responded eventually, "We could waive Id's at [Provider-1]."
- Bazile responded, "Ok well how man[y] names u wanna do at a time."
- Davis responded eventually, "3/4 at a time. . . . You have info now that I could run?"
- Bazile responded, "Ya one second do u need license info also?"
- Davis responded, "Yeah I do."
- Bazile responded, "Ok but do I need it when I come in? Cuz I don't have the faces."
- Davis responded, "Nah you don't right now."

8. Based on my training and experience, knowledge of the investigation, and discussions with other law enforcement officers, I believe that Davis and Bazile were discussing the scheme to defraud Provider-1 of iPhones using false names.

9. Records from Provider-1 indicate that in or around December 2019 and January 2020, Davis opened at least seven accounts under false names leading to at least $15,000 in loss to Provider-1.

**Manner And Means Of Conspiracy-2**

10. In or around December 2019, Julien applied to a financial institution ("Lender-1") for a loan on behalf of the Car Dealership ("Loan Application-1").

11. During the investigation, law enforcement obtained search warrants for email accounts belonging Julien and Bazile (the "Email Search Warrants"). The Email Search Warrants showed that Gilbert created false bank statements for Julien's Car Dealership that the conspirators submitted to Lender-1 as part of Loan Application-1.

12. Pursuant to the wiretap of Bazile's Phone, on or about December 2, 2020, law enforcement intercepted a conversation in which Julien and Bazile discussed that Gilbert prepared six months of fraudulent bank statements (the "Bank Statements") in return for payment. For example, Bazile stated, "[D]id he send you six months? . . . [D]on't even send that until you go over it. Ruck always making mistakes. . . . [Y]ou gotta make sure them numbers add up."

13. On or about December 2, 2020, Gilbert emailed the fraudulent Bank Statements to Julien via Gilbert's email account with username "ruck973". As an example, the statement for August 2019 for the Car Dealership's account ("Account-1"), sent by Gilbert, indicated an ending balance for the month of approximately $386,000. The true statement for the ending balance of Account-1 for August 2019 was approximately $2,000.

14. On or about December 3, 2020, Julien submitted the fraudulent Bank Statements to Lender-1, via email, in an attempt to obtain financing for the Car Dealership. In his conversations with Lender-1, Julien referenced that he had previously obtained funding for the Car Dealership of over $50,000. Lender-1 considered the application and ultimately rejected it.

15. On or about September 13, 2019, Julien applied for a line of credit in the amount of $80,000 on behalf of the Car Dealership from a different financial institution ("Lender-2"). Julien submitted fraudulent bank statements for the Car Dealership's Account-1 in conjunction with the application. On or about September 17, 2019, Julien signed a contract on behalf of the Car Dealership for a line of credit from Lender-2 in the amount of $50,000. Records from Lender-2 indicate that, through on or about February 28, 2020, Julien financed a total of approximately $289,637 through Lender-2.